No. 20,340.

PEOPLE EX REL THE CITY AND COUNTY OF DENVER, ETC., *v.* DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF COLORADO, ET AL.

(388 P. [2d] 403)

Decided January 20, 1964.

Mr. GLENN G. SAUNDERS, Mr. JACK ROSS, for petitioner City and County of Denver.

Mr. FRANK DELANEY, for respondent.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

In 1956, Civil Action No. 1193 was commenced in the District Court of the Fifth Judicial District of the State of Colorado, sitting in and for Eagle County in said district. The purpose of the action was to have a supplemental general adjudication of water rights in Water District No. 37. The City and County of Denver appeared therein and filed its Statement of Claim under the title "Roberts Tunnel Collection System." Denver sought a decree authorizing it to divert 1195 cubic feet of water per second of time from the Eagle River in District No. 37 and to transport it from said district through the Vail Pass Tunnel and to empty the same into the Dillon Reservoir located in Water District No. 36, said reservoir being a part of the Roberts Tunnel Collection System.

Denver, in its claim, also stated that:

" * * * The waters diverted as hereinabove mentioned will be applied partly to direct and immediate beneficial use and partly will be stored in the structures hereafter mentioned, for later beneficial use.

"(c) The reservoirs in which the above mentioned waters will be stored from time to time are the Dillon Reservoir, the Two Forks Reservoir, Marston Reservoir and, by exchange for waters of the South Platte River, Cheesman Reservoir, Eleven Mile Canon Reservoir and Antero Reservoir. Dillon Reservoir and Two Forks Reservoir have no present capacity, but when completed will have, respectively, 252,678 acre feet and 600,000 acre feet. The other reservoirs have been completed to capacities as follows: Marston Reservoir, 19,800 acre feet [recalculated and established at time of trial to be 17,853 acre feet]; Cheesman Reservoir, 79,000 acre feet; Eleven Mile Canon Reservoir, 81,917 acre feet and Antero Reservoir, 85,564 acre feet. * * * .

* * *

"10. The waters to be derived from the above mentioned diversions will be used for the following purposes:

all municipal uses, including domestic use, mechanical use, manufacturing use, generation of electric power, power generally, fire protection, use for sewage treatment, street sprinkling, watering of parks, lawns and grounds, the maintaining of adequate storage reserves, irrigation, replacement and the adjustment and regulation of the units of the Denver Municipal Water System within themselves and with other water users."

The trial court denied Denver's claim. This court, in *Metro. Assn. v. Colo. Dist.,* 148 Colo. 173, 365 P. (2d) 273, reversed the judgment of the trial court and remanded the cause to the trial court:

" * * * with directions * * * to enter its decree granting to each claimant respectively a conditional priority for the diversion and storage rights in the amounts claimed insofar as the facilities for their diversion are located in Water District No. 37 * * * ."

On remand the trial court, on June 8, 1962, presented to counsel for Denver a form of decree which the court proposed to sign. Denver objected to the proposed decree for the reason that it did not award to it the storage rights requested. Denver, at the time it presented its objections, tendered to the trial court a proposed decree which included the requested storage rights. The trial court refused to sign the decree tendered by Denver and signed the proposed decree which granted to Denver no storage rights.

Denver then instituted this original proceeding seeking a writ of mandamus to compel the trial court to comply with the remand from this court. This court entered its order directed to respondent to show cause why it should not enter its decree in conformity with the remand. The respondent answered the show cause order contending that its decree is in compliance with the remand.

Clearly, Denver sought not only to divert water, but to put it to beneficial use in places other than the district where diverted, and, among other things, to store

the water in Dillon Reservoir, Two Forks Reservoir, Marston Reservoir, Cheesman Reservoir, Eleven Mile Canon Reservoir and Antero Reservoir, all of which, except Two Forks Reservoir and Dillon Reservoir, had, at the time Denver filed its complaint, storage capacities as set forth in the claim of Denver.

The waters to be diverted are normally available only during the spring and early summer maximum runoff and for a short period each year, and naturally the right to store the water for use during periods of scarcity is essential and without which the diversion rights would be of minimal or no value.

The decree entered by the trial court does not grant to Denver that which it claimed; it does not conform to the order of this court directing that Denver's claim be allowed. The tendered decree grants to Denver that which it claims, that which this court ordered, and is in conformity with the remand of this court.

The rule to show cause is made absolute and the respondent is directed to vacate its decree of June 8, 1962, and in lieu thereof, and of said date, to sign the tendered decree and to take all necessary steps to have the same properly entered in the records of the court to the end that it be the final judgment of the court.